UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
AMY JULIA HARRIS,

                                        Plaintiffs,

                v.                                          **COMPLAINT**

UNITED STATES DEPARTMENT OF STATE,

                                        Defendant.

Plaintiffs THE NEW YORK TIMES COMPANY and AMY JULIA HARRIS (together, "The Times"), by and through their undersigned attorneys, allege as follows:

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), to obtain an order for the production of agency records from the United States Department of State ("State") in response to requests properly made by Plaintiffs.

2.      At issue here are twelve requests focused on State's Exchange Visitor Program, commonly known as the "J-1 Visa Program." Although several requests are involved and they have many subparts, they are all calibrated to obtain basic facts (some of which State has voluntarily disclosed in the past) about several categories of international exchange programs:

- Where do program participants work? (The "Placement Requests.")
- How often are participants mistreated? (The "Incident Requests.")
- And how does State address these harms? (The "Sanctions Requests.")

3.      The requested records will enable The Times and the public to understand more fully how and whether State has exercised appropriate oversight of a program that each year brings to America tens of thousands of foreign nationals, who in turn contribute substantially to local economies across the country. This much-needed transparency is made even more

important because the J-1 Visa Program is the subject of significant political debate and has repeatedly been scrutinized for failing to protect its participants' well-being.

## PARTIES

4.      Plaintiff The New York Times Company publishes *The New York Times* newspaper and www.nytimes.com. The Times is headquartered in this judicial district at 620 Eighth Avenue, New York, NY, 10018.

5.      Plaintiff Amy Julia Harris is an investigative reporter at *The New York Times*.

6.      Defendant, the United States Department of State, is an agency within the federal government; it oversees the J-1 Visa Program. It has possession and control of the records that Plaintiffs seek.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

8.      Venue is premised on Plaintiff The New York Times's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

9.      FOIA requires that agencies make a determination as to FOIA requests within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A)(i).

10.     To meet this requirement, the agency must produce the requested records or notify the requester of the statutory basis for withholding them. *See id.*; *id.* § 552(a)(6)(C)(i).

11.     If an agency determines that "unusual circumstances" apply and has satisfied the procedural requirements to invoke it, such as providing to the requester timely written notice of the circumstances and the date on which it expects to make a determination, FOIA allows the agency up to 10 additional business days to respond. *See id.* § 552(a)(6)(B)(i).

12.     Defendant has failed to meet the statutory deadlines set by FOIA. The Times is therefore deemed to have exhausted all administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

## BACKGROUND

### The J-1 Visa Program

13.     The J-1 Visa Program is a massive program involving State, the Department of Homeland Security, private sponsors, thousands of American employers, and tens of thousands of foreign workers and students. Not surprisingly, its sheer size has often rendered real public oversight illusive.

14.     The program was created by the Mutual Educational and Cultural Exchange Act of 1961, Pub. L. No. 87-256, 75 Stat. 527, codified as amended at 22 U.S.C. § 2451 *et seq.* (the "Act"). The Act's stated purpose is "to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange . . . ." 22 U.S.C. § 2451. It authorizes State to finance visits to the U.S. from students, trainees, teachers, and others. *See id.* § 2452(a). As State's regulations put it, such "[e]ducational and cultural exchanges assist the Department of State in furthering the foreign policy objectives of the United States." 22 C.F.R. § 62.1(a).

15.     To achieve the Act's goals, State offers numerous exchange programs, including such well-known educational exchanges such as the Fulbright Scholar Program. However, an increasingly large proportion of the J-1 Visa Program is devoted to employment-focused activities. These employment exchanges invite foreign nationals to work in the United States for as short as a few months to as long as a few years.

16.     In all, State currently offers J-1 visas to fourteen categories of foreign nationals: students, short-term scholars, trainees, teachers, professors, research scholars, specialists, alien

physicians, international visitors, government visitors, camp counselors, au pairs, summer work and travel ("SWT"), and interns. 22 C.F.R. § 62.4. Five of these fourteen categories—SWT, interns, trainees, camp counselors, and au pairs—are employment-based. The Times's FOIA requests pertain primarily to the first three of these: SWT, interns, and trainees.

17.     The SWT program permits foreign, post-secondary students to work and travel in the United States for up to four months during their summer breaks. *Id.* § 62.4(h)(6). SWT's stated purpose is "to provide foreign college and university students with opportunities to interact with U.S. citizens, experience U.S. culture while sharing their own cultures with Americans they meet, travel in the United States, and work in jobs that require minimal training and are seasonal or temporary in order to earn funds to help defray a portion of their expenses." *Id.* § 62.32(b). In 2022, more than 92,000 students from 124 countries participated in SWT. *See Participant and Sponsor Totals 2022*, BridgeUSA, https://j1visa.state.gov/basics/facts-and-figures/participant-and-sponsor-totals-2022/ (last visited Nov. 18, 2024); *Explore Data by Country 2022*, BridgeUSA, https://j1visa.state.gov/basics/facts-and-figures/participant-totals-by-country-2022/ (last visited Nov. 18, 2024).

18.     According to one scholar's analysis, SWT participants "work primarily in hotels, amusement parks, restaurants, grocery stores, and other retail outlets." Catherine Griebel Bowman, Flexible Workers, Fissured Workplaces: Cultural Exchange for Hire in an Era of Precarious Labor 5 (2019) (Ph.D. dissertation, University of Colorado), https://scholar.colorado.edu/downloads/vt150j378. The scholar was able to determine this based on SWT job placement data from 2015, which State produced to her in response to a FOIA request.

19.     The intern and trainee programs are slightly different from SWT. The intern

program permits foreign, post-secondary students or recent graduates to participate in work-

based internships in their academic fields. 22 C.F.R. § 62.4(h)(7). The trainee program permits

foreign nationals with work experience to participate in work-based training programs in their

occupational fields. *Id.* § 62.4(c). These programs' stated purpose is "to enhance the skills and

expertise of exchange visitors in their academic or occupational fields through participation in

structured and guided work-based training and internship programs and to improve participants'

knowledge of American techniques, methodologies, and technology." *Id.* § 62.22(b)(1)(i). In

2022, more than 16,000 workers from 150 countries participated in the intern program. More

than 10,000 workers from 141 countries participated in the trainee program. *See Participant and*

*Sponsor Totals 2022*, *supra*; *Explore Data by Country 2022*, *supra*. They worked in industries

ranging from agriculture to hospitality. *See Intern*, BridgeUSA,

https://j1visa.state.gov/programs/intern/ (last visited Nov. 18, 2024); *Trainee*, BridgeUSA,

https://j1visa.state.gov/programs/trainee/ (last visited Nov. 18, 2024).

20.     Running the J-1 Visa Program is no small task. A memorandum of understanding

between the Department of Homeland Security (which issues these visas) and State provides that

"[t]he Secretary of State will have final responsibility over visa guidance concerning eligibility

for classification for nonimmigrant and immigrant visas under INA section[] . . . 101(a)(15)(J)

(designate qualifying exchange visitor programs) . . . ." Memorandum of Understanding Between

the Secretaries of State and Homeland Security Concerning Implementation of Section 428 of

the Homeland Security Act of 2002 4,

https://law.yale.edu/sites/default/files/area/conference/ilroundtable/ADOS_DHS_MOU_re_HSA

.pdf. As a result, State effectively has exclusive authority over the program. But State relies heavily on public or private sponsor organizations to run the program's day-to-day operations.

21.     Sponsors not only play an integral role behind the scenes, but for participants, they are also the face of the J-1 Visa Program. They are responsible for screening and selecting participants, vetting host employers, placing participants into positions, and monitoring their activities and welfare. 22 C.F.R. §§ 62.10, 62.22(g), 62.32(n). To safeguard participants and to ensure the program runs smoothly, State requires sponsors to follow agency regulations, *id.* § 62.1(b), to demonstrate (among other things) their "ability to comply and remain in continual compliance with all applicable provisions of [22 C.F.R. part 62]," and to "[m]eet at all times [their] financial obligations and responsibilities attendant to successful sponsorship of [their] exchange visitor program," *id.* § 62.3(b). Upon request, sponsors must turn over to State "all information, reports, documents, books, files, and other records or information . . . on all matters related to their exchange visitor program." *Id.* § 62.10(e).

22.     In addition, sponsors must designate an employee to serve as a "Responsible Officer" and from one to ten additional employees to serve as "Alternate Responsible Officers." *Id.* § 62.9(g). These officers are responsible for (among other things) monitoring J-1 Visa Program participants and conducting official communications about the program with State. *Id.* § 62.11.

23.     Sponsors also may use domestic and foreign third parties to assist with administering the J-1 Visa Program. *See, e.g.*, *id.* §§ 62.22(g), 62.32(l)-(n). These include host organizations, governmental entities, academic institutions, and other partners and businesses. Sponsors are required to screen and vet such third parties. *Id.*

6

24.     Thirty-nine organizations currently serve as sponsors for SWT participants,
placing participants into seasonal or temporary jobs with host employers. *See Designated
Sponsor Organizations by Program*, BridgeUSA, https://j1visa.state.gov/participants/how-to-
apply/sponsor-search/ (last visited Nov. 18, 2024). As part of their duties, SWT sponsors must
"[s]ubmit placement reports on January 31 and July 31 of each year, identifying all Summer
Work Travel Program participants who began exchange programs during the preceding six-
month period." 22 C.F.R. § 62.32(p)(1). These reports "must include the exchange visitors'
names, SEVIS [Student and Exchange Visitor Information System] Identification Numbers,
countries of citizenship or legal permanent residence, names of host employers, and the length of
time it took non-pre-placed participants to secure job placements." *Id.*

25.     Ninety-seven organizations currently serve as sponsors for the intern program,
and ninety-one organizations currently serve as sponsors for the trainee program. *See Designated
Sponsor Organizations by Program*, *supra*. They are similarly responsible for placing intern and
trainee participants into positions with host organizations.

26.     Unsurprisingly, the enormous popularity of these employment-based exchanges
has made the J-1 Visa Program the subject of ongoing political and economic debate. In 2013,
for example, Senator Bernie Sanders opposed efforts to expand the program, arguing that such
efforts would exacerbate the unemployment rate of American youth because "many of the jobs
that used to be done by young Americans are now being performed by foreign college students
through the J-1 summer work travel program." 159 Cong. Rec. 9320 (2013). Seven years later,
despite their ideological differences on many other issues, then-President Donald J. Trump
suspended issuance of certain J-1 visas on grounds akin to those cited by Senator Sanders,
claiming that the visas harmed employment prospects for American workers. *See* Suspension of

Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market
During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg.
38263 (June 25, 2020); Michael D. Shear & Miriam Jordan, *Trump Suspends Visas Allowing
Hundreds of Thousands of Foreigners to Work in the U.S.*, N.Y. Times (July 23, 2020),
https://www.nytimes.com/2020/06/22/us/politics/trump-h1b-work-visas.html. And although
President Joseph R. Biden Jr. allowed that ban to expire, hundreds of companies and industry
groups have expressed concern that limitations on J-1 visas will harm businesses that depend on
seasonal labor. *See* Dan Levin, *Pandemic Restrictions on Foreign Seasonal Workers Could
Crimp the U.S. Summer.*, N.Y. Times (May 1, 2021),
https://www.nytimes.com/2021/05/01/us/pandemic-foreign-seasonal-workers.html; Patricia
Cohen & Sydney Ember, *Lack of Foreign Workers Has Seasonal Businesses Scrambling*, N.Y.
Times (Aug. 2, 2021), https://www.nytimes.com/2021/08/02/business/economy/seasonal-
foreign-guest-workers.html.

27.    To help shed light on the J-1 Visa Program's scope and economic impact, several
of The Times's FOIA requests (the Placement Requests) seek data about the job placements for
SWT, intern, and trainee participants—information similar to the placement data that State
released for 2015.

28.    The J-1 Visa Program is also of substantial public interest for a separate reason:
Although the program aims to share with participants a slice of the American Dream, for some it
has been more of a nightmare. Over the past decade and a half, news outlets, advocacy groups,
and workers themselves have repeatedly exposed mistreatment suffered by J-1 Visa Program
participants—mistreatment that occurred despite State's supposed safeguards. *See, e.g.*, Julia
Preston, *Foreign Students in Work Visa Program Stage Walkout at Plant*, N.Y. Times (Aug. 17,

2011), https://www.nytimes.com/2011/08/18/us/18immig.html (reporting that SWT participants walked out of their jobs at a Hershey's plant to protest unfair wages and work practices); Julia Preston, *Pleas Unheeded as Students' U.S. Jobs Soured*, N.Y. Times (Oct. 16, 2011), https://www.nytimes.com/2011/10/17/us/hershey-foreign-exchange-students-pleas-were-ignored.html (reporting allegations by SWT participants of workplace mistreatment); Associated Press, *U.S. Fails to Tackle Student Visa Abuses*, CBS News (Dec. 6, 2010), https://www.cbsnews.com/news/us-fails-to-tackle-student-visa-abuses/ (finding that some SWT workers were "forced to work in strip clubs instead of restaurants" and that "[o]thers take home $1 an hour or even less"); Int'l Lab. Recruitment Working Grp., Shining a Light on Summer Work 24 (2019), https://files.epi.org/uploads/j1-ilrwg-shining-a-light-on-summer-work-r1.pdf (finding that "SWT workers routinely report complaints about their treatment in the United States, including deplorable working and living conditions and frequent misrepresentations regarding the nature of the work they will be doing and the pay and benefits they will receive"); S. Poverty L. Ctr., Culture Shock: The Exploitation of J-1 Cultural Exchange Workers 10 (2014), https://www.splcenter.org/sites/default/files/d6_legacy_files/downloads/publication/j-1_report_v2_web.pdf (finding that SWT participants reported "recruiters charged exorbitant fees, forced them to sign fraudulent contracts, ignored complaints or even retaliated against them when they lodged complaints about their sponsors or employers").

29.     In at least one case, following complaints from students, State terminated an SWT sponsor (the Council for Educational Travel, USA) for failing to comply with federal regulations. *See* Julia Preston, *Company Banned in Effort to Protect Foreign Students From Exploitation*, N.Y. Times (Feb. 1, 2012), https://www.nytimes.com/2012/02/02/us/company-firm-banned-in-effort-to-protect-foreign-students.html. Later that year, State also issued new J-1

Visa Program regulations aimed at increasing worker protections. *See* Exchange Visitor

Program—Summer Work Travel, 77 Fed. Reg. 27593 (May 11, 2012) (codified at 22 C.F.R.

§ 62.32).

30.    State has sanctioned additional sponsors since then for violating regulations on

participant placement, monitoring, and recordkeeping, among other things. *See* Gov't

Accountability Off., Summer Work Travel Program: State Department Has Taken Steps to

Strengthen Program Requirements, but Additional Actions Could Further Enhance Oversight 17

(2015), https://www.gao.gov/assets/gao-15-265.pdf. A 2015 Government Accountability Office

report found that State had strengthened oversight of the SWT program but urged State to

implement additional changes to better protect participants. *Id.* at 32.

31.    Given this long history of worker mistreatment, the press and public have a strong

interest in knowing whether conditions for J-1 Visa Program participants have continued to

improve. And State maintains records that would shed light on precisely this issue.

32.    For one, State keeps records that show how often, and for what reasons, it has

sanctioned sponsors. State may impose sanctions if it finds that a sponsor has violated State's

regulations; endangered the health, safety, or welfare or a J-1 Visa Program participant; or

"[o]therwise conducted its program in such a way as to undermine the foreign policy objectives

of the United States, compromise the national security interests of the United States, or bring the

Department or the Exchange Visitor Program into notoriety or disrepute." 22 C.F.R. § 62.50(a).

Violations by a third party are imputed to the sponsor. *Id.* § 62.2. The range of potential

sanctions includes issuing a written reprimand, placing the sponsor on probation, imposing a

corrective action plan, reducing the number of participants or geographic scope of sponsor's

program, temporarily suspending the sponsor, or terminating the sponsor's involvement in the J-

1 Visa Program. *Id.* §§ 62.50(b)-(d); 62.60. State may also direct a sponsor to suspend or revoke

a Responsible Officer or Alternate Responsible Officer's appointment for the same reasons that

it may sanction a sponsor. *Id.* § 62.50(f).

33.     To shed light on how State enforces its regulations and what it does to prevent

future misconduct, several of The Times's FOIA requests (the Sanctions Requests) seek records

about sanctions against sponsors and third parties.

34.     In addition, State keeps records that show how often, and under what

circumstances, program participants are mistreated, harmed, or themselves accused of

misconduct. Sponsors for any J-1 Visa Program component must inform State in writing "of any

investigations of an exchange visitor's site of activity or serious problem or controversy that

could be expected to bring the Department of State, the Exchange Visitor Program, or the

sponsor's exchange visitor program into notoriety or disrepute." *Id.* § 62.13(d). Pursuant to this

requirement, State instructs sponsors to submit reports of such incidents to its Office of Private

Sector Exchange Administration. State provides incident reporting forms for the different J-1

Visa Program categories. *See, e.g.*, *Office of Private Sector Exchange Administration Incident

Report*, U.S. Dep't of State, https://j1visa.state.gov/wp-content/uploads/2022/06/Office-of-

Private-Sector-Exchange-Administration-Incident-Report.pdf (form for reporting incidents

related to SWT program); Intern and Trainee Exchange Program Incident Report, U.S. Dep't of

State, https://j1visa.state.gov/wp-content/uploads/2023/11/Intern-Trainee-Incident-Reporting-

Form-June-2019.pdf (form for reporting incidents related to intern and trainee programs). These

forms require sponsors to identify the nature of the incident being reported.

35.     To help sponsors determine the nature of an incident, State provides guidelines in

a document known as a "reporting rubric." State's SWT reporting rubric lists the following

nature-of-incident categories: Exchange Visitor Death, Exchange Visitor Missing, Absconder, or

Overstay, Serious Medical Issues, Litigation (lawsuits) or Other Legal Action, Serious Mental

Health Concerns, Incident Involving the Criminal Justice System, Incidents Involving Child

Protective Services, Sexually Related Incidents or Abuse, Lost or Stolen Immigration

Documents, Actual or Potential Negative Press, Foreign Government Involvement, Public

Security Incident or Natural Disasters Directly Involving Exchange Visitor Safety, Serious

Behavioral Problems, Dangerous or Unsuitable Living Conditions, Work Hour and Wage

Violations, Unsuitable Host/Work Conditions, Sponsor Violations, and Fraud. *Summer Work

Travel (SWT) Incident Reporting Rubric*, U.S. Dep't of State, https://j1visa.state.gov/wp-

content/uploads/2023/07/2023-Summer-Work-Travel-Incident-Reporting-Rubric-1.pdf.

36.    State's intern and trainee program reporting rubric lists similar nature-of-incident

categories: Dangerous or Unsuitable Living Conditions, Exchange Visitor Death, Exchange

Visitor Missing, Absconder, or Overstay, Incidents Involving the Criminal Justice System,

Litigation (Lawsuits) or Other Legal Actions, Serious Mental Health Concerns, Actual or

Potential Negative Press, Serious Behavioral Problems, Public Security Event or Natural

Disaster Directly Involving Exchange Visitor Safety, Serious Medical Issues, Serious Third

Party Issues, Sexually-Related Incident or Abuse, Sponsor Violations, Unsuitable Host/Work

Conditions, Work Hour and Wage Violations, Lost or Stolen Immigration Documents, Foreign

Government Involvement, and Fraud. *Intern & Trainee Program Incident Reporting Rubric*,

U.S. Dep't of State, https://j1visa.state.gov/wp-content/uploads/2023/10/Intern-Trainee-

Program-Reporting-Rubric-%E2%80%93-2023.pdf.

37.    Several of The Times's requests (the Incident Requests) seek records about these incident reports, which will shed light on whether J-1 Visa Program participants are being kept safe and whether State's efforts to increase worker protections have been effective.

38.    In sum, The Times has focused the FOIA requests at issue to uncover vital information that will inform the public about the government's administration and oversight of the J-1 Visa Program—a matter of significant public interest.

<u>The Placement Requests</u>

*Request 1 (SWT Program Placements)*

39.    On April 30, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 1") seeking:

> A list of every employer/employment placement, including the name of the employer, the address and the state, for all J-1 Summer Work Travel participants each year from 2019 to the present. Please also include the country of origin for each J1 SWT participant that corresponds to the place of employment, and the sponsor name. Please provide this information in a computer-searchable format, if available.

40.    Ms. Harris followed up with State to inquire about the status of Request 1 on June 10, 2024, and again on June 17, 2024, but did not hear back.

41.    On September 3, 2024, having received no response to Request 1, The Times administratively appealed State's constructive denial of the request.

42.    On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 1, but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory time limit.

43.    Although State's appeal denial letter purported to acknowledge Request 1 and to assign it a tracking number, State misidentified the request at issue as a different one submitted by Ms. Harris (and which is not the subject of this litigation).

44.    On September 17, 2024, The Times informed State that the agency had misidentified the relevant request, attached a time-stamped copy of Request 1, and asked State to provide a tracking number for it.

45.    The Times, not having received a response, again asked State on October 25, 2024, to provide a tracking number for Request 1.

46.    State finally responded on October 29, 2024, assigning to Request 1 the tracking number F-2024-22455.

47.    To date, The Times has not received a determination on Request 1.

*Request 2 (Intern Program Placements)*

48.    On May 9, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 2") seeking:

- A list of every employer/employment placement, including the name of the employer, the address and the state, for all J-1 Intern-Program participants each year from 2020 to the present. Please also include the country of origin for each J1 Intern-Program participant that corresponds to the place of employment, and the sponsor name. Please provide this information in a computer-searchable format, if available.
- Any and all complaints, investigations, enforcement actions, corrective action plans and memos about employers and sponsors in the J-1 Intern-Program from 2019 to the present.
- Any and all sponsors and employers in the J-1 Intern-Program that were banned or removed from the program from 2017 to the present.

49.    On September 3, 2024, having received no response to Request 2, The Times administratively appealed State's constructive denial of the request.

50.    On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 2, but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory time limit.

51.    In its appeal denial letter, State also belatedly acknowledged Request 2 and assigned it a tracking number, F-2024-12352.

52.    To date, The Times has not received a determination on Request 2.

*Request 3 (Trainee Program Placements)*

53.    On August 2, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 3") seeking:

> A list of every host employer/employment placement, including the name of the employer, the address and the state, for all J-1 Trainee participants in 2019 and 2024. Please also include the country of origin for each J1 Trainee participant, their age, and the sponsor name for each participant that corresponds to their place of employment. Please provide this information in a computer-searchable format, if available.

54.    On August 13, 2024, State acknowledged Request 3 and assigned it a tracking number, F-2024-17083.

55.    Citing "the need to search for and collect requested records from other Department offices or Foreign Service posts," State asserted that it "will not be able to respond within the 20 days provided by the statute due to 'unusual circumstances.'" State did not specify the date on which it expected to make a determination on Request 3.

56.    On September 3, 2024, having received no determination on Request 3, The Times administratively appealed State's constructive denial of the request.

57.    On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 3,

but that The Times could bring a lawsuit if State failed to respond within FOIA's statutory time

limit.

58.    To date, The Times has not received a determination on Request 3.

<u>The Sanctions Requests</u>

*Request 4 (Suspensions and Terminations for All Sponsors)*

59.    On June 20, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request

to State ("Request 4") seeking:

> A list of all J-1 visa sponsors, including the names of the principals and/or
> responsible officers, who were suspended, had their designation revoked, or were
> denied redesignation from 2014 to the present. Please specify which category of
> J-1 visa (Au PAir, camp counselor, summer work travel, research scholar, college
> and university student, professor, short-term scholar, secondary school student,
> trainee, intern-program) the sponsor was suspended for, had their designation
> revoked or were denied redesignation.

60.    On July 24, 2024, State acknowledged Request 4 and assigned it a tracking

number, F-2024-15469.

61.    Citing "the need to search for and collect requested records from other

Department offices or Foreign Service posts," State asserted that it "will not be able to respond

within the 20 days provided by the statute due to 'unusual circumstances.'" State did not specify

the date on which it expected to make a determination on Request 4.

62.    On September 3, 2024, having received no determination on Request 4, The

Times administratively appealed State's constructive denial of the request.

63.    On September 10, 2024, State denied The Times's administrative appeal. State

informed The Times that it would not consider an appeal until the agency processed Request 4,

but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory

time limit.

64.     To date, The Times has not received a determination on Request 4.

*Request 5 (SWT Sponsor Sanctions)*

65.     On May 8, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request

to State ("Request 5") seeking:

Any and all complaints, investigations, enforcement actions and closing memos
about the following companies/entities from 2016 to the present:

Alliance Abroad Group, L.P.
American Exchange Organization, Inc.
American Journey Cultural Exchange
United Work and Travel, a Division of APEI
American Work Adventures, Inc.
ASSE Aspire, Inc.
CampGroup, LLC
Camp Wayne for Boys, Inc.
Camp Counselors USA/Work Experience USA
Cultural Homestay International
Council on International Educational Exchange, Inc.
CSB International, Inc.
A Cultural Exchange Service, Inc.
Educational Resource Development Trust
International Cultural Exchange Organization Inc.
International Educational Exchange, Inc.
International Exchange of North America, Inc.
Ireland Institute of Pittsburgh
InterExchange,Inc.
Intrax Work/Travel
Janus International Hospitality Student Exchange
Life Adventures, Inc.
Greenwood Lake Gaelic Cultural Society, Inc.
Signature Services Corporation
Spirit Cultural Exchange, Inc.
United Studies, Inc.
Greenheart Exchange
Foundation for Worldwide International Student Exchange
American Institute For Foreign Study - Campower Program
GeoVisions
American Work Experience
Cultural Exchange Network, Inc.
Walt Disney Parks and Resorts, U.S., Inc.
Dynamic Global Exchange, Inc.
Global Educational Concepts, Inc.

ICCE, Inc.
LifeTRAVELED, Inc.

66.    On June 4, 2024, State acknowledged Request 5 and assigned it a tracking

number, F-2024-12319.

67.    Citing "the need to search for and collect requested records from other

Department offices or Foreign Service posts," State asserted that it "will not be able to respond

within the 20 days provided by the statute due to 'unusual circumstances.'" State did not specify

the date on which it expected to make a determination on Request 5.

68.    On June 5, 2024, State asked Ms. Harris to specify the type of complaint,

investigation, or other record sought by The Times. State added that it would close the request if

it did not hear from Ms. Harris by June 19, 2024.

69.    Ms. Harris replied just ten minutes later, explaining that The Times was

requesting all the enforcement and oversight documents about J-1 visa sponsors
that DOS has in regards to the summer work travel program, including all
investigations, audits, inspections, corrective action plans and enforcement
actions . . . from 2016 to the present[.]

70.    On June 12, 2024, having heard nothing further about Request 5, Ms. Harris

followed up with State to ask when the agency estimated it would produce the requested records.

71.    State replied twelve days later, on June 24, 2024, stating, "Our electronic records

indicate that FOIA request control number F-2024-12319 is closed because you did not provide

the information needed to process the request as indicated in the attached communication."

72.    Within eight minutes, Ms. Harris replied, explaining that Request 5 should not

have been closed, attaching a copy of her June 5 email clarifying the documents sought by The

Times, and asking State to re-open the request.

73.     State replied on June 25, 2024, noting receipt of her email but providing no additional information.

74.     On September 3, 2024, having received no determination on Request 5, The Times administratively appealed State's constructive denial of the request.

75.     On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 5, but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory time limit.

76.     To date, The Times has not received a determination on Request 5.

*Request 6 (Trainee Sponsor Sanctions)*

77.     On August 2, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 6") seeking:

> Any and all J-1 Visa Trainee program sponsors, including but not limited to the following, who were sanctioned from 2017 to the present, broken down by year. Please also include information on the sponsors about why they were sanctioned, the narrative of the sanction and violation, and include any penalty and response by the sponsor[.]

The request also included a list of trainee program sponsors.

78.     On September 3, 2024, having received no response to Request 6, The Times administratively appealed State's constructive denial of the request.

79.     On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 6, but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory time limit.

80.     In its appeal denial letter, State also belatedly acknowledged Request 6 and assigned it a tracking number, F-2024-17071.

81.     To date, The Times has not received a determination on Request 6.

*Request 7 (Third Party Sanctions)*

82.     On May 24, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 7") seeking:

- a list of all foreign third party entities used by the J-1 summer work travel sponsors from 2023 to the present
- A list of all domestic third party entities used by the J-1 summer work travel sponsors from 2023 to the present
- Copies of all the most recent written and executed agreements with the third parties used by the J-1 summer work travel sponsors
- The most recent annual price list, which includes an itemized breakdown of the costs that exchange visitors must pay to both foreign agents and sponsors to participate in the Summer Work Travel Program on a country-specific (and, if appropriate, foreign agent-specific) basis.
- Any and all enforcement actions and investigations of entities used by the J-1 summer work travel sponsors from 2022 to the present

83.     On September 3, 2024, having received no response to Request 7, The Times administratively appealed State's constructive denial of the request.

84.     On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 7, but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory time limit.

85.     In its appeal denial letter, State also belatedly acknowledged Request 7 and assigned it a tracking number, F-2024-14124.

86.     To date, The Times has not received a determination on Request 7.

The Incident Requests

*Request 8 (SWT Incident Reports)*

87.    On May 14, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request

to State ("Request 8") seeking:

> All incident reports about J-1 summer work travel participants from 2017 to the
> present (Summer Work Travel), for the following categories:
> - Exchange Visitor Death
> - Exchange Visitor Missing, Absconder, or Overstay
> - Serious Mental Health Concerns
> - Sexually Related Incidents or Abuse
> - Dangerous or Unsuitable Living Conditions
> - Work Hour and Wage Violations
> - Unsuitable Host/Work Conditions

88.    On September 3, 2024, having received no response to Request 8, The Times

administratively appealed State's constructive denial of the request.

89.    On September 10, 2024, State denied The Times's administrative appeal. State

informed The Times that it would not consider an appeal until the agency processed Request 8,

but that The Times could bring a lawsuit given State's failure to respond within FOIA's statutory

time limit.

90.    In its appeal denial letter, State also belatedly acknowledged Request 8 and

assigned it a tracking number, F-2024-12793.

91.    To date, The Times has not received a determination on Request 8.

*Request 9 (SWT Injuries and Deaths)*

92.    On May 14, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request

to State ("Request 9") seeking:

> - The numbers of injuries of people in the J-1 visa program (Summer Work
>   Travel) from 2014 to the present.
> - The numbers of deaths of people in the J-1 visa program (Summer Work
>   Travel) from 2014 to the present.

21

- The number of J-1 visa program participants who received workers comp payouts each year from 2014 to the present (Summer Work Travel)
- The number of complaints/referrals about human trafficking in the J-1 visa program each year from 2014 to the present (Summer Work Travel)

93.    To date, The Times has not received an acknowledgment or determination on Request 9.

### *Request 10 (Aggregate SWT Incident Data)*

94.    On October 8, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 10") seeking:

Aggregate data on the number of serious incident or controversy reports about J-1 Summer Work Travel participants, broken down by state and city, from 2019 to the present for the following categories, including but not limited to the following:
- The death, disappearance, or serious injury or illness of the exchange visitor Incidents involving the criminal justice system
- Sexually-related incidents or abuse
- Serious behavioral problems or mental health concerns surrounding the exchange visitor
- Incidents involving child protective services
- Fraud (e.g., visa, immigration, or financial fraud or scam)
- Unsuitable host/work conditions (e.g., incident or allegation involving workplace bullying, harassment, discrimination, hostile work environment, or work hours and/or wage-related issues)
- Potential or actual negative press involving the sponsor's exchange visitor program
- Incidents where a foreign government has become involved
- Lost or stolen immigration documents
- Theft of intellectual property
- Violation of export controls (that is, export of sensitive technology or information)
- Other situations impacting exchange visitor safety

95.    To date, The Times has not received an acknowledgment or determination on Request 10.

### *Request 11 (Aggregate Intern Incident Data)*

96.    On October 8, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA request to State ("Request 11") seeking:

Aggregate data on the number of serious incident or controversy reports about J-1 Intern participants, broken down by state and city, from 2021 to the present for the following categories, including but not limited to the following:

- The death, disappearance, or serious injury or illness of the exchange visitor Incidents involving the criminal justice system
- Sexually-related incidents or abuse
- Serious behavioral problems or mental health concerns surrounding the exchange visitor
- Incidents involving child protective services
- Fraud (e.g., visa, immigration, or financial fraud or scam)
- Unsuitable host/work conditions (e.g., incident or allegation involving workplace bullying, harassment, discrimination, hostile work environment, or work hours and/or wage-related issues)
- Potential or actual negative press involving the sponsor's exchange visitor program
- Incidents where a foreign government has become involved
- Lost or stolen immigration documents
- Theft of intellectual property
- Violation of export controls (that is, export of sensitive technology or information)
- Other situations impacting exchange visitor safety

97.    One minute later, Ms. Harris submitted an amended version of her request, seeking the same information but for the period from 2019 to the present.

98.    On October 24, 2024, State acknowledged the original version of Request 11 (for the period beginning 2021 instead of 2019) and assigned it a tracking number, F-2025-01740.

99.    Citing "the need to search for and collect requested records from other Department offices or Foreign Service posts," State asserted that it "will not be able to respond within the 20 days provided by the statute due to 'unusual circumstances.'" State did not specify the date on which it expected to make a determination on Request 11.

100.    To date, The Times has not received a determination on the amended version of Request 11.

*Request 12 (Aggregate Trainee Incident Data)*

101.    On August 2, 2024, Ms. Harris, on behalf of The Times, submitted a FOIA

request to State ("Request 12") seeking:

> Aggregate data on the number of serious incident or controversy reports about J-1
> Trainee participants from 2019 to the present for the following categories:
> - The death, disappearance, or serious injury or illness of the exchange
>   visitor
> - Incidents involving the criminal justice system
> - Sexually-related incidents or abuse
> - Serious behavioral problems or mental health concerns surrounding the
>   exchange visitor
> - Incidents involving child protective services
> - Fraud (e.g., visa, immigration, or financial fraud or scam)
> - Unsuitable host/work conditions (e.g., incident or allegation involving
>   workplace bullying, harassment, discrimination, hostile work
>   environment, or work hours and/or wage-related issues)
> - Potential or actual negative press involving the sponsor's exchange visitor
>   program
> - Incidents where a foreign government has become involved
> - Lost or stolen immigration documents
> - Theft of intellectual property
> - Violation of export controls (that is, export of sensitive technology or
>   information)
> - Other situations impacting exchange visitor safety.

102.    On August 15, 2024, State acknowledged Request 12 and assigned it a tracking

number, F-2024-17080.

103.    Citing "the need to search for and collect requested records from other

Department offices or Foreign Service posts," State asserted that it "will not be able to respond

within the 20 days provided by the statute due to 'unusual circumstances.'" State did not specify

the date on which it expected to make a determination on Request 12.

104.    On September 3, 2024, having received no determination on Request 12, The

Times administratively appealed State's constructive denial of the request.

105.     On September 10, 2024, State denied The Times's administrative appeal. State informed The Times that it would not consider an appeal until the agency processed Request 12, but that The Times could bring a lawsuit if State failed to respond within FOIA's statutory time limit.

106.     To date, The Times has not received a determination on Request 12.

## FIRST CAUSE OF ACTION (REQUEST 1)

107.     Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

108.     Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

109.     Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

110.     Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

111.     No exemptions permit the withholding of the documents sought by this request.

112.     Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## SECOND CAUSE OF ACTION (REQUEST 2)

113.     Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

114.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

115.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

116.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

117.    No exemptions permit the withholding of the documents sought by this request.

118.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## THIRD CAUSE OF ACTION (REQUEST 3)

119.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

120.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

121.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

122.    Defendant did not properly invoke an extension for "unusual circumstances," but even if it had, Defendant still has failed to make a determination on this request within FOIA's maximum deadline of 30 business days. *Id.* § 552(a)(6)(B)(i).

123.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

124.    No exemptions permit the withholding of the documents sought by this request.

125.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

**FOURTH CAUSE OF ACTION (REQUEST 4)**

126.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

127.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

128.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

129.    Defendant did not properly invoke an extension for "unusual circumstances," but even if it had, Defendant still has failed to make a determination on this request within FOIA's maximum deadline of 30 business days. *Id.* § 552(a)(6)(B)(i).

130.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

131.    No exemptions permit the withholding of the documents sought by this request.

132.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

**FIFTH CAUSE OF ACTION (REQUEST 5)**

133.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

134.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

135.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

136.    Defendant did not properly invoke an extension for "unusual circumstances," but even if it had, Defendant still has failed to make a determination on this request within FOIA's maximum deadline of 30 business days. *Id.* § 552(a)(6)(B)(i).

137.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

138.    No exemptions permit the withholding of the documents sought by this request.

139.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

**SIXTH CAUSE OF ACTION (REQUEST 6)**

140.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

141.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its

possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

142.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

143.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

144.    No exemptions permit the withholding of the documents sought by this request.

145.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## <u>SEVENTH CAUSE OF ACTION (REQUEST 7)</u>

146.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

147.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

148.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

149.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

150.    No exemptions permit the withholding of the documents sought by this request.

151.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## **EIGHTH CAUSE OF ACTION (REQUEST 8)**

152.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

153.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

154.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

155.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

156.    No exemptions permit the withholding of the documents sought by this request.

157.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## **NINTH CAUSE OF ACTION (REQUEST 9)**

158.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

159.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

160.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

161.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

162.    No exemptions permit the withholding of the documents sought by this request.

163.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## TENTH CAUSE OF ACTION (REQUEST 10)

164.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

165.    Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

166.    Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

167.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

168.    No exemptions permit the withholding of the documents sought by this request.

169.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## ELEVENTH CAUSE OF ACTION (REQUEST 11)

170.    Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

171.     Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

172.     Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

173.     Defendant did not properly invoke an extension for "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i).

174.     Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

175.     No exemptions permit the withholding of the documents sought by this request.

176.     Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

**TWELFTH CAUSE OF ACTION (REQUEST 12)**

177.     Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

178.     Defendant is an agency subject to FOIA and must therefore conduct an adequate search using reasonable efforts for responsive records; release any disclosable records in its possession at the time of the request; and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

179.     Defendant has failed to meet FOIA's statutory deadline of 20 business days to make a determination on this request. 5 U.S.C. § 552(a)(6)(A)(i).

180.    Defendant did not properly invoke an extension for "unusual circumstances," but even if it had, Defendant still has failed to make a determination on this request within FOIA's maximum deadline of 30 business days. *Id.* § 552(a)(6)(B)(i).

181.    Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

182.    No exemptions permit the withholding of the documents sought by this request.

183.    Accordingly, Plaintiffs are entitled to an order compelling Defendant to produce records responsive to this request.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Declare that the documents sought by the requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

2.    Order Defendant to undertake an adequate search for the requested records and to provide those records to Plaintiffs within 20 business days of the Court's order;

3.    Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA, 5 U.S.C. § 552(a)(4)(E)(i); and

4.    Grant Plaintiffs such other relief as this Court deems just and proper.

Dated: New York, New York                    */s/ David E. McCraw*
       November 18, 2024                    David E. McCraw
                                     Al-Amyn Sumar
                                     Legal Department
                                     The New York Times Company
                                     620 Eighth Avenue
                                     New York, NY 10018
                                     Phone: (212) 556-4031
                                     Email: mccraw@nytimes.com
                                     Email: al-amyn.sumar@nytimes.com

                                     *Counsel for Plaintiffs*